Roman A. Popov (SBN 321339)
Morton & Associates LLP
246 West Broadway
New York, NY 10013
T: (212) 468-5511
F: (212) 504-0888
E: rp@moas.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BIGFOOT VENTURES LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>MARK S. KNIGHTON and SHAPETOOLS, LLC,<br><br>Defendants,<br><br>and,<br><br>NEXTENGINE, INC.,<br><br>Nominal Defendant. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**DERIVATIVE CLAIMS FOR:**<br><br>**1. BREACH OF FIDUCIARY DUTY;**<br><br>**2. ABUSE OF CONTROL;**<br><br>**3. CORPORATE WASTE;** and<br><br>**4. UNJUST ENRICHMENT** |

Plaintiff, Bigfoot Ventures Limited ("Bigfoot" or "Plaintiff"), by and through its attorneys, Morton & Associates LLP, and as for its Complaint against nominal Defendant NextEngine, Inc. ("NextEngine" or the "Corporation") and Defendants ShapeTools, LLC ("ShapeTools") and Mark S. Knighton (collectively the "Defendants") alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this derivative action against NextEngine's founder and Chief Executive Officer, Mark S. Knighton and his entity ShapeTools, based upon a severe dereliction of fiduciary duties, abuse of control, corporate waste and unjust enrichment, which included a furtive and improper transfer of all of NextEngine's inventory and revenue to his own entity, ShapeTools, resulting in the Corporation becoming barren and insolvent.

## PARTIES

2.      Bigfoot is a private limited liability company, duly organized and existing under the laws of Hong Kong.

3.      Upon information and belief, NextEngine is a corporation existing under the laws of the State of Delaware, with a principal place of business in Los Angeles County.

4.      Upon information and belief, ShapeTools is a limited liability company existing under the laws of the State of Delaware, with a principal place of business in Los Angeles County.

5.      Upon information and belief, Mark S. Knighton is an individual domiciled in Los Angeles County.

PAGE 1
DERIVATIVE COMPLAINT

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over the instant action pursuant to the diversity provisions of 28 U.S.C. §1332(a)(2), because the claims exceed the sum of $75,000, exclusive of interest and costs, Plaintiff is a limited liability company with its sole director and shareholder domiciled in Hong Kong, NextEngine's and ShapeTools' principal places of business are in California and Knighton is domiciled in California.

7.     Upon information and belief, this Court has personal jurisdiction over Defendants because NextEngine and ShapeTools maintain their principal places of business in Los Angeles County and Knighton is domiciled in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendants NextEngine, ShapeTools and Knighton are residents of Los Angeles County for venue purposes and because a substantial part of the events giving rise to the claims occurred in Los Angeles County.

## STATEMENT OF FACTS

### Bigfoot Acquires NextEngine Stock

9.     The parties to the instant dispute are no strangers to one another. Indeed, Bigfoot, NextEngine and Knighton have been entangled in litigation since as far back as 2008, concerning Bigfoot's principal's investments into the Corporation.

10.     NextEngine is a corporation, founded in 2000 by Defendant Knighton, involved in the research, development, manufacturing and sale of three dimensional laser scanners.

11.     Defendant Knighton is also the founder, chairman, Chief Executive Officer and largest shareholder of NextEngine.

12.     NextEngine's flagship product is the '3D Scanner Ultra HD' laser scanner (the "3D Scanner"), which captures a physical object's exact size, shape and specifications and projects them on a computer screen as a digital three dimensional representation with utmost precision.

13.     One of the first principal investors into NextEngine and its promising 3D Scanner technology was Michael Gleissner, a Hong Kong entrepreneur.

14.     Around the time that NextEngine was first being launched in 2000, Gleissner made a significant capital investment and acquired stock in the Corporation.

15.     Thereafter, Gleissner, through his venture capital firm, Bigfoot, the Plaintiff in the instant action, continued to provide NextEngine with the infusion of capital that it would need to operate.

16.     Collectively, since its founding in 2000, Gleissner and his company, Bigfoot, invested in excess of $11,000,000 to acquire 28,750,000 shares of stock in NextEngine, which are held by Bigfoot as of the present date.

**NextEngine Defaults on Its Loan and Bigfoot Obtains a Judgment**

17.     As an additional part of his investment scheme into NextEngine, Gleissner, through Bigfoot, made a series of substantial loans to the Corporation between 2002 and 2005, injecting it with the funding it would need to operate and further develop its 3D Scanner technology.

18.     More specifically, these loans were all memorialized on September 15, 2005 in a Secured Promissory Note (the "2005 Note") between NextEngine and Bigfoot.

PAGE 3
DERIVATIVE COMPLAINT

19.     On February 23, 2007, the 2005 Note, which provided that Bigfoot's loans were secured by NextEngine's intellectual property, was later replaced by another Secured Promissory Note (the "2007 Note") containing virtually identical material terms, with a different payment schedule.

20.     On June 2, 2008, after the 2007 Note became due and NextEngine was unable to make any payments, Gleissner and Defendant Knighton agreed to restructure the loan and replace the 2007 Note with a third Secured Promissory Note (the "2008 Note"), reflecting the terms of the newly restructured loan.

21.     Pursuant to the 2008 Note, NextEngine agreed to pay the "Principal Amount" of €5,500,000 plus interest, upon ten days' written notice, at any time after the first anniversary of the Note.

22.     After NextEngine was, once again, unable to meet its contractual repayment obligations, an avalanche of litigation ensued in the Los Angeles Superior Courts.

23.     NextEngine's default on the 2008 Note became the subject of three separate LASC actions, specifically, SC 097959, BC 427246 and BC 573303.

24.     The latest action, entitled *Bigfoot Ventures Limited v. NextEngine, Inc.* and assigned Case No. BC 573303, resulted in Bigfoot prevailing on its summary judgment motion, based upon NextEngine's failure to repay the 2008 Note, and being awarded a judgment in the amount of approximately $8.2 million on March 16, 2017 (the "Judgment") against NextEngine. An appeal of the Judgment is presently *sub judice.*

**Knighton Assigns All of NextEngine's Inventory and Revenue to ShapeTools**

25.     Subsequent to the Judgment being awarded to Bigfoot, and unbeknownst to its principal, Knighton incorporated a secret entity, ShapeTools LLC, on December 22, 2009. Indeed, the first time that Bigfoot learned about ShapeTools was during the Judgment Debtor Examination ("JDE") of Knighton conducted on October 27, 2017.

26.     Rather than incorporate ShapeTools for a legitimate business purpose, during his JDE, Knighton testified under oath that the secret entity was incorporated for the sole and express purpose of concealing revenue from Bigfoot and thwarting it from collecting even a penny of the Judgment.

27.     Thereafter, on the same day that ShapeTools was incorporated, Knighton executed an agreement between NextEngine and ShapeTools, entitled "ShapeTools and NextEngine Shareholder and Creditor Guarantee Agreement" (the "ShapeTools Agreement"), which purportedly transferred all NextEngine inventory and revenue to ShapeTools. Knighton executed the ShapeTools Agreement on behalf of both entities.

28.     As for the purpose behind this secretive assignment, Knighton himself testified during his JDE that the ShapeTools Agreement was executed with the intent of preventing Bigfoot from recovering any money owed to it by NextEngine.

29.     Perplexingly, and erroneously, Knighton further testified that he was not obligated to seek the approval of NextEngine's shareholders to enter into the ShapeTools Agreement, nor even provide them with notice.

30.     In Knighton's view, the transfer of all of NextEngine's inventory and revenue to ShapeTools, which left the Corporation barren with no inventory and only few thousand

dollars in its bank account, was just an ordinary corporate transaction between two companies and not subject to a shareholder vote.

31.     Notwithstanding the fact that Cal. Corp. Code Sec. 1001(a) mandates that a transaction of this magnitude be subject to board and shareholder approval, and assuming, *in arguendo*, that the transaction was lawful, the ShapeTools Agreement, at best, constituted a severe dereliction of Knighton's fiduciary duties owed to NextEngine and its shareholders.

32.     Despite masquerading the ShapeTools Agreement as something that was somehow beneficial to NextEngine and its shareholders, including Bigfoot, and not only himself, Knighton's post-execution course of action paints a much different picture.

33.     Neither Bigfoot nor its principal, Gleissner, were aware of the ShapeTools Agreement, or even that such an entity existed, for almost 8 years after the assignment took place.

34.     In fact, Plaintiff learned about the existence of ShapeTools and the accompanying ShapeTools Agreement not because Knighton fulfilled his fiduciary duties and informed Bigfoot that the Corporation of which it owned more than 28 million shares was now essentially insolvent, but because he was compelled to testify under oath during his JDE.

35.     Despite ShapeTools recognizing income diverted from NextEngine's sales of the 3D Scanner to the tune of approximately $10.8 million between January 2013 and December 2017, Bigfoot (and NextEngine) have not realized any advantage from the ShapeTools Agreement whatsoever.

36.     It is a complete and utter fallacy that the ShapeTools Agreement was intended to benefit NextEngine and its shareholders when the truth of the matter is that NextEngine's second-

largest shareholder, Bigfoot, was not even made aware of the transaction until Knighton was coerced to disclose ShapeTools under the penalty of perjury.

37.     According to the ShapeTools Agreement, ShapeTools became the "authorized reseller" of NextEngine's 3D Scanner. Again, the facts of the case belie this contention.

38.     ShapeTools does not "re-sell" NextEngine 3D Scanners. Instead, any income realized from the sale of NextEngine's 3D Scanners, which bear the NextEngine brand and logo and are sold via the Corporation's website, www.nextengine.com, are deposited directly into a bank account owned exclusively by ShapeTools.

39.     Indeed, while ShapeTools realized almost $11 million in revenue from sales of NextEngine's 3D Scanner between January 2013 and December 2017, NextEngine received precisely $0 from these sales, without being paid any commissions, royalties, or distributions from its "authorized reseller".

40.     These uncontested facts further illustrate that ShapeTools is nothing other than a shell-entity in Knighton's deliberate scheme to frustrate Bigfoot's Judgment collection efforts by stripping NextEngine of its assets and revenue streams, to the detriment of all of the Corporation's shareholders, including Bigfoot.

41.     Plaintiff brings this action derivatively in the right of and for the benefit of NextEngine to redress injuries suffered and to be suffered by NextEngine as a consequence of Defendants' breaches of fiduciary duty, abuse of control and gross mismanagement of the Corporation. Plaintiff and its counsel will adequately and fairly represent the interests of NextEngine in enforcing and prosecuting its rights.

42.     Plaintiff has delivered a copy of the complaint to the Corporation prior to filing in accordance with Corp. Code §800(b)(2).

43.     Plaintiff was a shareholder of NextEngine at the time of the wrongdoing complained of, and has continuously been a shareholder up to, and including, the present date.

44.     Based upon Defendants' acts and omissions in direct violation of their fiduciary duties of care, good faith, honesty and loyalty, a pre-suit demand on the NextEngine Board to bring the claims asserted in this action is excused as a futile and useless act.

45.     NextEngine's Board of Directors consists only of Knighton and Mark Seneca, Knighton's long-time legal counsel who, on behalf of NextEngine, drafted and negotiated a multitude of loan documents between NextEngine and Bigfoot, and also drafted the ShapeTools Agreement.

46.     NextEngine's decision-making is dominated exclusively by Knighton, who personally participated in and caused the illicit transfer of all inventory and revenue to ShapeTools and has been involved in litigation with Gleissner for more than a decade, meaning that a demand upon Knighton to rectify his own actions should be excused as futile.

47.     Moreover, Plaintiff has not made any demand on the Board to institute this action because Seneca, Knighton's long-time legal advisor and the other NextEngine Director, also faces a substantial likelihood of liability as a result of his own acts and omissions in regards to the illicit transfer of all inventory and revenue to ShapeTools, which renders him unable to impartially consider a demand to pursue the wrongdoings alleged herein. Because Seneca directly participated in the drafting of the ShapeTools Agreement and has not sought to remedy the damage inflicted upon the Corporation as a consequence of its execution, a

demand upon him, as a Board Member of NextEngine, to rectify his own actions should be excused as futile.

48.    Finally, Plaintiff has not made any demand on NextEngine to investigate and prosecute the wrongdoing alleged herein, because (i) making such a demand would be a futile and useless act as Knighton and Seneca are unable to conduct an independent and objective investigation of the alleged wrongdoing and (ii) the wrongful conduct of Defendants is not subject to protection under the business judgment rule.

49.    Despite Defendants' detailed knowledge of the history of misconduct and mismanagement committed by Knighton, the Corporation has failed to seek recovery on its own for any of the misconduct alleged herein, prompting Plaintiff to commence the instant derivative proceedings.

## CAUSES OF ACTION

### COUNT I – BREACH OF FIDUCIARY DUTY
*(against Defendants NextEngine and Knighton)*

50.    Plaintiff hereby repeats each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

51.    Defendants NextEngine and Knighton were and are required to use their abilities to control and manage the Corporation in a fair, just and equitable manner in order to ensure that the Corporation complied with all applicable laws and contractual obligations, to refrain from abusing their positions of control and not favor their own interests at the expense of NextEngine.

52.    The wrongful conduct particularized herein was not due to an honest error in judgment, but rather due to Defendants' gross mismanagement, bad faith and/or reckless disregard of

the rights and interests of NextEngine and its shareholders for acting without the requisite

reasonable and ordinary care which they owed the Corporation.

53.   As a proximate consequence of the foregoing, Defendants have participated in harming

NextEngine and have breached fiduciary duties owed to the Corporation. Defendants

knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted

the other Defendants in the breaches of their fiduciary duties.

54.   By reason of the foregoing, NextEngine has sustained and will continue to sustain

damages and injuries for which it has no adequate remedy at law.

### COUNT II – ABUSE OF CONTROL
*(against Defendants NextEngine and Knighton)*

55.   Plaintiff hereby repeats each and every allegation set forth in the preceding paragraphs

of this Complaint as if fully set forth herein.

56.   By virtue of their positions and financial stake in NextEngine, Defendants exercised

significant dominion and control over NextEngine and its operations, and owed duties as

controlling persons to NextEngine not to use their positions of control within the

Corporation for their own personal interests and contrary to the interests of NextEngine and

its shareholders.

57.   Defendants' conduct amounts to an abuse of their control of NextEngine, in violation of

their obligations to the Corporation. Defendants knowingly aided, encouraged, cooperated

and/or participated in and substantially assisted the other Defendants in their abuse of

control.

58.   As a result of Defendants' abuse of control, NextEngine has sustained and will continue

to sustain damages and injuries for which it has no adequate remedy at law.

PAGE 10
DERIVATIVE COMPLAINT

## COUNT III – CORPORATE WASTE
### *(against Defendants NextEngine and Knighton)*

59.     Plaintiff hereby repeats each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

60.     Defendants had a fiduciary duty to exercise good faith and diligence in the administration of the affairs of NextEngine and in the use and preservation of its inventory and assets, including the highest obligation of fair dealings.

61.     Defendants wasted corporate assets by assigning all of NextEngine's inventory and revenue to ShapeTools, without any notice to the Corporation's shareholders whatsoever.

62.     As a result of Defendants' actions, NextEngine has suffered extensive losses since the illicit transfer of all of the Corporation's inventory and revenue took place, all while ShapeTools has realized revenue from the sales of NextEngine's 3D Scanner in excess of $10.8 million.

63.     As a result of Defendants' wrongful conduct, NextEngine has suffered and will continue to suffer damages in an amount to be determined at trial.

## COUNT IV – UNJUST ENRICHMENT
### *(against Defendant ShapeTools)*

64.     Plaintiff hereby repeats each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

65.     As a consequence of Knighton's illicit transfer, ShapeTools received all inventory and revenue derived from sales of NextEngine's 3D Scanner.

66.     All Defendants participated in the wrongful conduct set forth in the Complaint above, and ShapeTools was unjustly enriched by such wrongful conduct, to the extreme detriment of NextEngine and its shareholders.

67.     ShapeTools' enrichment is directly and causally related to the detriment of NextEngine and its shareholders.

68.     These benefits accepted by ShapeTools were under such circumstances that it would be inequitable for them to be retained without compensation to NextEngine and its shareholders.

69.     ShapeTools was enriched as a consequence of Defendants' breaches of their fiduciary duties and/or abuse of control.

70.     As such, it is not justified for ShapeTools to retain the benefits conferred upon it.

**WHEREFORE**, based on the foregoing, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

i.    Awarding compensatory damages against all Defendants in in amount to be proven at trial, but in no event less than $75,000;

ii.   Awarding restitution and disgorgement of all revenue derived by ShapeTools as a consequence of the wrongful conduct alleged herein;

iii.  Awarding appropriate equitable relief, including and injunctive or declaratory relief necessary to prevent NextEngine's management from engaging in similar wrongful conduct in the future;

iv.   Awarding punitive damages at the maximum amount permitted by law;

v.  Awarding pre-judgment interest, including attorneys' fees and the costs and disbursements of this action;

vi.  Awarding such other and further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury as to all issues.

Dated:  New York, New York
        September 10, 2019

**Morton & Associates LLP**

By: _____

Roman A. Popov, Esq.
*Attorney for Plaintiff*
246 West Broadway
New York, NY 10013
Tel: (212) 468-5511
Fax: (212) 508-0888
rp@moas.com

PAGE 13
DERIVATIVE COMPLAINT